Torrance L. Coburn
Sarah M. Lockwood
Bryan Charles Tipp
TIPP COBURN LOCKWOOD PC
2200 Brooks Street
P.O. Box 3778
Missoula, MT  59806-3778
Telephone: (406) 549-5186
Facsimile: (406) 412-0956
torrance@tippcoburn.com
sarah@tippcoburn.com
bryan@tippcoburn.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| CALON DEAN KING,<br><br>      Plaintiff,<br><br>vs.<br><br>DONOVAN VAN NOTE, individually and in his capacity as a Trooper with the Montana Highway Patrol; ANDREW NOVAK, individually and in his capacity as a Sergeant with the Montana Highway Patrol; MONTANA HIGHWAY PATROL; MONTANA DEPARTMENT OF JUSTICE; STEVEN LAVIN, individually and in his capacity as Colonel of the Montana Highway Patrol (retired),<br><br>      Defendants. | Cause No. _____<br><br><br>COMPLAINT and<br>DEMAND FOR JURY TRIAL |

-1-

COMES NOW the Plaintiff, Calon Dean King ("Calon"), by and through his counsel TIPP COBURN LOCKWOOD, PC, and for his Complaint against the Defendants, states and alleges as follows:

## JURISDICTION AND VENUE

1. This action arises under the Fourth and Fourteenth Amendment to the United States Constitution, as well as the Montana Constitution and Montana law. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because some of the claims arise under the United States Constitution. This Court has further jurisdiction under 28 U.S.C. § 1343 because the Defendants have acted under color of state law to deprive Calon of his federal rights, privileges and immunities.

2. This Court also has supplemental jurisdiction over Calon's state law claims pursuant to 28 U.S.C. § 1367, because the state law claims are part of the same case and controversy as the federal claims.

3. Venue is proper pursuant to 28 U.S.C. § 1391.

4. In regards to this action and the claims therein, Calon has complied with the requirements set forth in Montana Code Annotated § 2-9-301.

## PARTIES

5. The Plaintiff, Calon Dean King, at all times pertinent to this action was a resident of the State of Montana, Missoula County.

6.      Defendant Donovan Van Note is a resident of the State of Montana, Missoula County, and was serving as a Trooper for the Montana Highway Patrol at all times pertinent to this action.  Defendant Van Note is being sued individually and in his capacity as a Trooper for the Montana Highway Patrol.  By engaging in the conduct described herein, Defendant Van Note acted under the color of law and in the course and scope of his employment with the Montana Highway Patrol.

7.      Defendant Andrew Novak is believed to be a resident of the State of Montana, Missoula County, and was serving as a Sergeant for the Montana Highway Patrol at all times pertinent to this action.  Defendant Novak is being sued individually and in his capacity as a Sergeant for the Montana Highway Patrol.  By engaging in the conduct described herein, Defendant Novak acted under the color of law and in the course and scope of his employment with the Montana Highway Patrol.

8.      Defendant Steven Lavin is believed to be a resident of the State of Montana, Lewis and Clark County, and was serving as Colonel of the Montana Highway Patrol during the times pertinent to this action.  Defendant Lavin is being sued individually and in his capacity as Colonel of the Montana Highway Patrol. By engaging in the conduct described herein, Defendant Lavin acted under the color of law and in the course and scope of his employment with the Montana Highway Patrol.

9. Defendant Montana Highway Patrol is a law enforcement agency of the Montana Department of Justice.

10. Defendant Montana Department of Justice is an agency of the State of Montana.

## GENERAL ALLEGATIONS

11. Plaintiff Calon Dean King realleges, and incorporates by reference, all preceding allegations as if fully set forth herein.

12. On June 13, 2022, at approximately 12:16 p.m., Calon was operating a motor vehicle traveling east on US Highway 10 West.

13. At the same time, Trooper Van Note, acting within the course and scope of his employment as a Trooper with the Montana Highway Patrol, was in his patrol vehicle and as Calon passed his patrol vehicle, Trooper Van Note activated the lights of his patrol vehicle to initiate a stop of the vehicle Calon was operating.

14. Calon complied with Trooper Van Note's activation of the lights of his patrol vehicle and pulled the vehicle over to stop, and activated the hazard lights on his vehicle while pulling his vehicle to a stop.

15. At approximately 12:17 p.m. June 13, 2022, Trooper Van Note approached Calon's vehicle and began his interaction with him, with Trooper Van

Note stating that he pulled Calon over because Calon was going 66 mph in a 55 mph zone.

16.     At approximately 12:17 p.m. June 13, 2022, Trooper Van Note asked Calon for his license, registration, and proof of insurance.

17.     Calon responded to Trooper Van Note's requests and promptly provided his license, registration, and proof of insurance.

18.     At approximately 12:18 p.m. June 13, 2022, Trooper Van Note asked Calon for his phone number, to which Calon promptly and coherently responded, and was articulate in his response.

19.     At approximately 12:18 p.m. June 13, 2022, Trooper Van Note noted an unopened six pack of Twisted Tea was in the vehicle on the front, passenger-side floorboard, and stated that Calon's eyes were "glassy" and then asked Calon if he had consumed any alcohol that day, to which Calon responded that he had not.

20.     At approximately 12:19 p.m. June 13, 2022, Trooper Van Note asked Calon for the keys to Calon's vehicle.  Calon complied with Trooper Van Note's request and gave Trooper Van Note the keys to Calon's vehicle.

21.     In his "MHP DUI Report" concerning his interaction with Calon, Trooper Van Note indicated "NONE" in the "Other Observations – Breath Odor" section of the Report.

22. At approximately 12:19 p.m. June 13, 2022, Trooper Van Note returned to his patrol vehicle to run Calon's information.

23. At approximately 12:21 p.m. June 13, 2022, Trooper Van Note informed dispatch that he would be conducting standardized field sobriety tests on Calon.

24. At approximately 12:21 p.m. June 13, 2022, Trooper Van Note backed up his patrol vehicle.

25. At approximately 12:22 p.m. June 13, 2022, Trooper Van Note returned to Calon's vehicle, and despite having no reasonable and/or particularized suspicion that Calon was operating his vehicle under the influence of alcohol or drugs, instructed Calon to get out of his vehicle so that Trooper Van Note could administer standard field sobriety tests ("SFSTs").

26. Calon complied with Trooper Van Note's directives.

27. At approximately 12:23 p.m. June 13, 2022, Trooper Van Note conducted a Terry Stop on Calon.

28. At approximately 12:24 p.m. June 13, 2022, Trooper Van Note started a Horizontal Gaze Nystagmus Test ("HGN") on Calon, with Calon faced towards the passing traffic on US Highway 10.

29. At approximately 12:25 p.m. June 13, 2022, Trooper Van Note ended the HGN and switched Calon's position to face away from traffic, after which he restarted the HGN.

30. At approximately 12:26 p.m. June 13, 2022, Calon stated to Trooper Van Note that it was windy, to which Trooper Van Note agreed, after which Trooper Van Note ended the HGN and repositioned Calon a second time, this time facing Trooper Van Note's patrol vehicle.  Thereafter, at approximately 12:29 p.m. June 13, 2022, Trooper Van Note started the HGN for a third time.

31. At approximately 12:28 p.m. June 13, 2022, Trooper Van Note conducted a Vertical Gaze Nystagmus Test ("VGN").

32. Throughout the HGNs and VGN, it was significantly windy.

33. In his "MHP DUI Report" concerning his interaction with Calon, Trooper Van Note indicated that Calon had "no hgn or vgn" and "0 clues."

34. At approximately 12:29 p.m. June 13, 2022, Trooper Van Note had Calon sit on the front bumper of Trooper Van Note's vehicle, after which Trooper Van Note stated to Calon "you're giving me some indications of impairment, but, um, I'm not seeing stuff related to alcohol" and asked if there was anything in Calon's system that could cause impairment, to which Calon responded that the only things that were in his system were caffeine and nicotine.

35.     At approximately 12:30 p.m. June 13, 2022, Trooper Van Note stated to Calon that Calon's eyes were "kinda (sp) clear but kinda (sp) glossy."

36.     At approximately 12:31 p.m. June 13, 2022, Trooper Van Note directed Calon to remain seated on the front bumper of Trooper Van Note's patrol vehicle so that Trooper Van Note could "make some calls."  Calon complied with Trooper Van Note's directive, and as Trooper Van Note left to return to his patrol vehicle, Calon extended his hand in an effort to shake Trooper Van Note's hand, to which Trooper Van Note initiated a "fist-bump" with Calon.

37.     At approximately 12:33 p.m. June 13, 2022, Trooper Van Note called Sergeant Andrew Novak to discuss his testing of Calon and the results of the tests, during which Trooper Van Note stated Calon had unopened Twisted Teas on the floorboard of Calon's vehicle, Calon's "eyes were glassy", Trooper Van Note was "not getting anything on HGN, but [Calon] was super nervous and like really shaky, and his eyes were – they're not bloodshot but there really glassy."  Trooper Van Note also relayed to Sergeant Novak that Calon stated he had only had "nicotine and caffeine."  Trooper Van Note then stated he did not know what to do and sought advice from Sergeant Novak.

38.     At approximately 12:35 p.m. June 13, 2022, Trooper Van Note exited his patrol vehicle and returned to Calon, at which time Trooper Van Note stated to

Calon "[Trooper Van Note was] going to keep going with the rest of the tests so that we can eliminate everything."

39.     At approximately 12:35 p.m. June 13, 2022, Trooper Van Note had Calon get up from his seated position on the front bumper of Trooper Van Note's patrol vehicle and move to a standing position facing Trooper Van Note's patrol vehicle, at which time Trooper Van Note began to explain the walk-and-turn test to Calon.

40.     At approximately 12:38 p.m. June 13, 2022, Trooper Van Note had Calon begin the walk-and-turn test.

41.     At approximately 12:41 p.m. June 13, 2022, Trooper Van Note conducted a one leg stand/balancing test.

42.     In his "MHP DUI Report" concerning his interaction with Calon, Trooper Van Note "did not see any clues of impairment on the [One Leg Stand test]."

43.     At approximately 12:42 p.m. June 13, 2022, Trooper Van Note directed Calon to sit on the front bumper of Trooper Van Note's patrol vehicle. Calon complied with Trooper Van Note's directive.

44.     At approximately 12:48 p.m. June 13, 2022, Sergeant Novak arrived at the scene, at which time Trooper Van Note left Calon to have a conversation with Sergeant Novak.  During Trooper Van Note's conversation with Sergeant

Novak, Trooper Van Note stated, *inter alia*, "0 out of 4 on the one leg stand", "I don't think its alcohol" and "[Calon] said he doesn't do weed."

45.    At approximately 12:49 p.m. June 13, 2022, Trooper Van Note began reading Calon the implied consent advisory for administering a preliminary breath test ("PBT"), during which Trooper Van Note indicated that he was requesting the test because he suspected Calon was driving under the influence of alcohol.  In response to Trooper Van Note reading the implied consent advisory, Calon consented to a PBT.

46.    At approximately 12:50 p.m. June 13, 2022, Calon performed the PBT.  The result of the PBT was a reading of .000.

47.    At approximately 12:51 p.m. June 13, 2022, after reading the .000 PBT result, Trooper Van Note stated to Calon "I think you are under the influence of something."

48.    Following receiving the reading of .000 of the PBT, Trooper Van Note falsely alleged that Calon performed poorly on the SFSTs, despite video evidence disputing these allegations.

49.    At approximately 12:51 p.m. June 13, 2022, Trooper Van Note placed Calon under arrest for DUI and placed him in handcuffs, cuffing Calon's hands behind his back.  No additional testing was performed on Calon between the PBT and his arrest by Trooper Van Note.

50.     At approximately 12:56 p.m. June 13, 2022, Trooper Van Note placed Calon in his patrol vehicle.

51.     At approximately 1:01 p.m. June 13, 2022, Trooper Van Note began driving his patrol vehicle to Providence Saint Patrick Hospital.

52.     At approximately 1:04 p.m. June 13, 2022, Trooper Van Note mirandized Calon.

53.     At approximately 1:05 p.m. June 13, 2022, Trooper Van Note read Calon the implied consent advisory regarding the request by Trooper Van Note for a blood test.  In response to Trooper Van Note reading the implied consent advisory, Calon consented to a blood test.

54.     At approximately 1:08 p.m. June 13, 2022, Calon stated to Trooper Van Note "I am sorry if I am coming across as a little hostile, it's just frustrating", to which Trooper Van Note responded, "On the contrary Mr. King, you have been super cooperative with me and I really appreciate it."

55.     At approximately 1:17 p.m. June 13, 2022, Trooper Van Note and Calon arrived at Providence Saint Patrick Hospital so that a blood draw could be performed on Calon.

56.     At approximately 1:50 p.m. June 13, 2022, after the blood draw had been performed on Calon, Trooper Van Note and Calon left Providence Saint Patrick Hospital and drove to the Missoula County Detention Center ("MCDC").

57.    At approximately 2:04 p.m. June 13, 2022, after arriving at the MCDC, Calon was uncuffed so that his heart rate could be taken.

58.    At approximately 2:15 p.m. June 13, 2022, Trooper Van Note informed Calon that Calon was not going to jail, but that he would be receiving a citation for DUI and a speeding infraction.

59.    At approximately 2:17 p.m. June 13, 2022, Trooper Van Note and Calon left the MCDC and drove to the Albertsons located on North Reserve St. in Missoula.

60.    At approximately 2:20 p.m. June 13, 2022, Trooper Van Note and Calon arrived at the Albertsons located at on North Reserve St.

61.    At approximately 2:21 p.m. June 13, 2022, Trooper Van Note allowed Calon to exit Trooper Van Note's patrol vehicle, at which time Trooper Van Note gave Calon his citations and a receipt for the towing of Calon's vehicle.

62.    Throughout Calon's interactions with both Trooper Van Note and Sergeant Novack, Calon was respectful and Calon complied with all of both Troopers' directives and orders, despite his confusion and frustration at being seized and arrested without cause.

63.    Throughout Calon's interactions with both Trooper Van Note and Sergeant Novack, Calon's speech was clear and coherent, and Calon did not slur his speech.

64.    As a result of Trooper Van Note's arrest of Calon, Calon was charged with Driving Under the Influence of Alcohol or Drugs – 1st Offense, and Speeding – Exceed Restricted/Special Zone Speed Limit Established By Department.

65.    On June 13, 2022, a criminal case was filed by the State of Montana against Calon in the Missoula County Justice Court, bearing cause no. CR-610-2022-0003083, wherein Calon was charged with Driving Under the Influence of Alcohol or Drugs – 1st Offense, and Speeding – Exceed Restricted/Special Zone Speed Limit Established By Department.

66.    On June 21, 2022, Calon appeared before Judge Holloway in Missoula County Justice Court and pled not guilty to the above-stated criminal charges, at which time Calon was placed on conditions of release which restricted his liberties.

67.    On July 19, 2022, the Montana Department of Justice Forensic Science Division completed its Toxicology Report regarding the testing of Calon's blood sample drawn at Providence Saint Patrick Hospital, with the testing indicating there was no alcohol, cannabis, or other impairing substance detected in Calon's blood at the time of his above-referenced June 13, 2022 arrest.

68.    On July 26, 2022, in Missoula County Justice Court case, cause no. CR-610-2022-0003083, the State of Montana moved to dismiss the charge of Driving Under the Influence of Alcohol or Drugs – 1st Offense.

69.     On July 26, 2022, in Missoula County Justice Court case, cause no. CR-610-2022-0003083, the charge of Driving Under the Influence of Alcohol or Drugs – 1st Offense was dismissed by Judge Holloway.

70.     Calon's Complaint has been timely filed with this Court.

## COUNT I – CIVIL RIGHTS VIOLATION PURSUANT TO 42 U.S.C. § 1983 VIOLATION OF FOURTH AND/OR FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
### (*Against Donovan Van Note*)

71.     Plaintiff Calon Dean King realleges, and incorporates by reference, all preceding allegations, as if fully set forth herein.

72.     Defendant Donovan Van Note is a person pursuant to 42 U.S.C § 1983.

73.     At all times pertinent hereto, Trooper Van Note acted within the course and scope of his employment with the Montana Highway Patrol, and his acts and/or omissions were made under the color of authority and law as a Trooper for the Montana Highway Patrol.

74.     On June 13, 2022, Trooper Van Note violated Calon's constitutional rights by detaining and arresting Calon for Driving Under the Influence of Alcohol or Drugs – 1st Offense without probable cause to believe that criminal offense had been committed.

75. Based upon the facts known to Trooper Van Note, no reasonable officer could believe probable cause existed to arrest Calon.

76. Trooper Van Note violated Calon's clearly established Fourth and/or Fourteenth Amendment Right(s) under the United States Constitution to be free from unlawful detention and/or arrest.

77. Trooper Van Note demonstrated deliberate indifference to and/or reckless disregard for Calon's civil and constitutional rights by his unlawful detention and/or arrest of Calon.

78. Trooper Van Note's actions were willful, wanton, unlawful, reckless, malicious, and/or show a callous disregard for Calon's well established rights; therefore, punitive damages should be awarded in an amount to be determined by jury.

79. As a direct and proximate result of Trooper Van Note's above-described illegal and unjustified conduct, Calon was injured and is entitled to recover for what he has suffered in the past and will suffer in the future, including, but not limited to:

   a. Deprivation of his constitutional rights;

   b. Humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress;

c. Actual and compensatory damages, including, but not limited to, past, present and future pain and suffering, loss of income, and medical expenses;

d. All expenses associated with his wrongful and illegal arrest, including any costs and fees associated with the defense of the criminal proceeding brought against him as a result of his wrongful and illegal arrest;

e. Punitive damages;

f. All expenses associated with the prosecution of the instant action, including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and the maximum legally allowable judgment interest; and

g. Any other expense or costs allowed pursuant to federal or state law, including, but not limited to, reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

## COUNT II – CIVIL RIGHTS VIOLATION PURSUANT TO 42 U.S.C. § 1983 VIOLATION OF FOURTH, FIFTH AND/OR FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION (*Against Andrew Novack*)

80. Plaintiff Calon Dean King realleges, and incorporates by reference, all preceding allegations, as if fully set forth herein.

81. Defendant Andrew Novack is a person pursuant to 42 U.S.C § 1983.

82. At all times pertinent hereto, Sergeant Novack acted within the course and scope of his employment with the Montana Highway Patrol, and his acts and/or omissions were made under the color of authority and law as a Trooper for the Montana Highway Patrol.

83. On June 13, 2022, Sergeant Novack participated in Calon's arrest for Driving Under the Influence of Alcohol or Drugs – 1st Offense.

84. On June 13, 2022, Sergeant Novack violated Calon's constitutional rights by detaining and arresting Calon without probable cause to believe a criminal offense had been committed.

85. Based upon the facts known to Sergeant Novack, no reasonable officer could believe probable cause existed to arrest Calon for Driving Under the Influence of Alcohol or Drugs – 1st Offense.

86. Sergeant Novack violated Calon's clearly established Fourth and/or Fourteenth Amendment Right(s) under the United States Constitution to be free from unlawful detention and/or arrest.

87. Sergeant Novack demonstrated deliberate indifference to and/or reckless disregard for Calon's civil and constitutional rights by his unlawful detention and/or arrest of Calon.

88.     Sergeant Novack's actions were willful, wanton, unlawful, reckless, malicious, and/or show a callous disregard for Calon's well established rights; therefore, punitive damages should be awarded in an amount to be determined by jury.

89.     As a direct and proximate result of Sergeant Novack's above-described illegal and unjustified conduct, Calon was injured and is entitled to recover for what he has suffered in the past and will suffer in the future, including, but not limited to:

    a.  Deprivation of his constitutional rights;

    b.  Humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress;

    c.  Actual and compensatory damages, including, but not limited to, past, present and future pain and suffering, loss of income, and medical expenses;

    d.  All expenses associated with his wrongful and illegal arrest, including any costs and fees associated with the defense of the criminal proceeding brought against him as a result of his wrongful and illegal arrest;

    e.  Punitive damages;

f.  All expenses associated with the prosecution of the instant action, including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and the maximum legally allowable judgment interest; and

g.  Any other expense or costs allowed pursuant to federal or state law, including, but not limited to, reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

## COUNT III – CIVIL RIGHTS VIOLATION PURSUANT TO 42 U.S.C. § 1983 VIOLATION OF FOURTH AND/OR FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
### (*Against Steve Lavin*)

117.   Plaintiff Calon Dean King realleges, and incorporates by reference, all preceding allegations, as if fully set forth herein.

118.   Defendant Steve Lavin is a person pursuant to 42 U.S.C § 1983.

119.   At all times pertinent hereto, former Colonel Lavin's actions and/or omissions were made under the color of authority and law as Colonel of the Montana Highway Patrol.

120.   While Colonel of the Montana Highway Patrol, former Colonel Lavin was responsible for supervising and training the troopers of the Montana Highway Patrol, as well as implementing and enforcing the Montana Highway Patrol's policies.

121. Defendant Lavin failed to establish and/or maintain, and/or enforce proper policies, patterns, practices, or customs for determining when probable cause exists to arrest for operating a motor vehicle while intoxicated. Furthermore, Defendant Lavin personally participated in the deprivation of Calon's constitutional rights by enacting and/or ratifying policies that permitted Calon's injuries to occur, and by failing to properly train, supervise, retain, and/or control Trooper Van Note.

122. Before the events described *supra*, Defendant Lavin deliberately and with reckless disregard for the constitutional rights of its citizens failed to establish an adequate policy and procedure for training and supervising officers with the Montana Highway Patrol relating to when probable cause exists to arrest for operating a motor vehicle under the influence.

123. Defendant Lavin knew or should have known that Calon's constitutional rights were being violated by the conduct of personnel he supervised, namely Trooper Van Note.

124. Upon information and belief, Defendant Lavin failed to properly investigate and punish prior constitutional deprivations, which encouraged a culture in the Montana Highway Patrol of unlawful arrests.

125. The wrongful acts of Trooper Van Note were set in motion by Defendant Lavin, and their acts or omissions caused and/or contributed to the

deprivation of Calon's statutory and constitutional rights, rights of which reasonable persons should have been aware.

126.    Defendant Lavin established policies that caused the violation of Calon's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

127.    Defendant Lavin employed policies of inaction or acquiescence relative to unlawful arrests for driving under the influence made without probable cause which amounted to a failure to protect Calon's constitutional rights.  This inaction and/or acquiescence amounted to deliberate indifference because the connection between the need for more or different training, supervision, and/or discipline and the likely resulting constitutional deprivations was obvious, and because it is well established that inadequate training, supervision and discipline of law enforcement officers is highly likely to lead to constitutional violations.

128.    The failure of Defendant Lavin to implement effective policies, patterns, practices, and/or customs was a moving force behind, and effectively caused, Defendant Van Note to violate Calon's constitutional rights.

129.    The actions and/or omissions of Defendant Lavin intruded upon Calon's clearly established rights to be free unlawful detention and/or arrest without probable cause under the Fourth and Fourteenth Amendments.

130.    Defendant Lavin's actions were willful, wanton, unlawful, reckless, malicious, and/or show a callous disregard for Calon's well established rights; therefore, punitive damages should be awarded in an amount to be determined by jury.

131.    As a direct and proximate result of Defendant Lavin's above-described illegal and unjustified conduct, Calon was injured and is entitled to recover for what he has suffered in the past and will suffer in the future, including, but not limited to:

    a. Deprivation of his constitutional rights;

    b. Humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress;

    c. Actual and compensatory damages, including, but not limited to, past, present and future pain and suffering, loss of income, and medical expenses;

    d. All expenses associated with his wrongful and illegal arrest, including any costs and fees associated with the defense of the criminal proceeding brought against him as a result of his wrongful and illegal arrest;

    e. Punitive damages;

f.  All expenses associated with the prosecution of the instant action, including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and the maximum legally allowable judgment interest; and

g.  Any other expense or costs allowed pursuant to federal or state law, including, but not limited to, reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

## COUNT IV –VIOLATION OF CALON DEAN KING'S RIGHTS UNDER THE MONTANA CONSTITUTION
### (*Against all Defendants*)

132.   Plaintiff Calon Dean King realleges, and incorporates by reference, all preceding allegations, as if fully set forth herein.

133.   Under the Montana Constitution, Calon has the following fundamental, inalienable, and self-executing constitutional rights:  The right to individual privacy (Article II, Section 10); the right to be secure in his person, papers, home and effects from unreasonable searches and seizures (Article II, Section 11); and the right not to be deprived of life, liberty, or property without due process of law (Article II, Section 17).

134.   Defendants' acts or omissions before, during and after June 13, 2022, violated Calon's aforementioned constitutional rights.

135.    Calon has the right to certain unenumerated rights, including, but not limited to, the right to seek recourse against those who violate his constitutional rights.

136.    As a direct and proximate result of the Defendants' violation of the rights granted to Calon under the Montana Constitution, Calon has suffered and continues to suffer damages, including emotional distress damages, and other pecuniary and non-pecuniary damages.  Calon is therefore entitled to compensatory damages and attorneys' fees for Defendants' violations of his state constitutional rights.

## COUNT V – NEGLIGENCE
### (*Against all Defendants*)

137.    Plaintiff Calon Dean King realleges, and incorporates by reference, all preceding allegations, as if fully set forth herein.

138.    Defendants owed Calon a duty of care while carrying out their duties on June 13, 2022.  In carrying out their official functions as law enforcement officers and entities, Defendants were required to protect Calon's constitutional, statutory and common law rights.

139.    Defendants violated Calon's constitutional, statutory and common law rights and breached duties to him as described in this Complaint.  These violations accrued, in part, as a result of Defendants' negligent acts, including negligent

decision to arrest Calon when probable cause did not exist to justify such arrest; negligent arrest and seizure of Calon; negligent hiring, retention, training, supervision, and discipline of law enforcement officers; negligent enactment, enforcement, and violation of law enforcement policies and procedures; and negligent performance of official duties.

140.   As a direct and proximate result of the Defendants' negligence, Calon has suffered and continues to suffer damages, including emotional distress damages, and other pecuniary and non-pecuniary damages.

## COUNT VI – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (*Against all Defendants*)

141.   Plaintiff Calon Dean King realleges, and incorporates by reference, all preceding allegations, as if fully set forth herein.

142.   Defendants' negligent acts or omissions caused serious or severe emotional distress to Calon.  Calon's emotional distress was a reasonably foreseeable consequence of the Defendants' negligent conduct.

143.   As a direct and proximate result of Defendants' negligent conduct, Calon suffered serious and severe emotional distress that no reasonable person would be expected to endure.

WHEREFORE, Plaintiff Calon Dean King prays for judgment against the Defendants as follows:

A. Damages in a reasonable amount to fully compensate Calon Dean King for deprivation of his constitutional rights;

B. Damages in a reasonable amount to fully compensate Calon Dean King for the humiliation, degradation, loss of reputation and community standing, public ridicule, and emotional distress;

C. Actual and compensatory damages, including, but not limited to, past, present and future pain and suffering, loss of income, and medical expenses;

D. Damages in a reasonable amount to fully compensate Calon Dean King for all expenses associated with his wrongful and illegal arrest, including, but not limited to, any costs and fees associated with the defense of the criminal proceeding brought against him as a result of his wrongful and illegal arrest;

E. Punitive damages in an amount sufficient to punish the Defendants and serve as a warning to other similarly situated persons and entities that such conduct will not be tolerated;

F. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Montana law;

G. Calon Dean King's costs and disbursements incurred herein; and

H. For such and other relief as may be determined just and equitable by this Court and in compliance with the laws of the United States of America and the State of Montana.

-26-

DATED this 10th day of October, 2025.

> TIPP COBURN LOCKWOOD PC
>
> By: _/s/ Torrance L. Coburn_
> Torrance L. Coburn
> Sarah M. Lockwood
> Bryan Charles Tipp
> *Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, by and through his attorneys, and demands a jury trial on all issues of fact in the above case.

DATED this 10th day of October, 2025.

> TIPP COBURN LOCKWOOD PC
>
> By: _/s/ Torrance L. Coburn_
> Torrance L. Coburn
> Sarah M. Lockwood
> Bryan Charles Tipp
> *Attorneys for Plaintiff*