IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

CALON DEAN KING,

Plaintiff,

vs.

DONOVAN VAN NOTE, individually and in his capacity as a Trooper with the Montana Highway Patrol, ANDREW NOVAK, individually and in his capacity as a Sergeant with the Montana Highway Patrol; MONTANA HIGHWAY PATROL; MONTANA DEPARTMENT OF JUSTICE; and STEVEN LAVIN, individually and in his capacity as Colonel of the Montana Highway Patrol (retired),

Defendants.

CV 25-164-M-DWM

OPINION
and ORDER

A review of the pleadings and briefs in this matter indicates that there are matters that can be resolved "on the papers," and therefore in the context of the present motions, and those that cannot. Fundamentally, there are factual issues that prevent summary adjudication of this matter. The case is a civil rights action based on a traffic stop leading to a driving under the influence of drugs ("DUI") investigation and arrest of Plaintiff Calon King. King alleges that he was unconstitutionally detained and arrested by Montana State Trooper Donovan Van

Note and Sergeant Andrew Novak, under the supervision of Colonel Steven Lavin (collectively, "Officer Defendants"). King has also sued the Highway Patrol and the Montana Department of Justice (together, "State Defendant") (collectively, "Defendants"). Defendants have moved to dismiss the state-law claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and seek summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56(a). For the reasons explained below the motion to dismiss is well taken, while the motion for summary judgment fails with limited exception.

**BACKGROUND**

King's factual allegations are assumed to be true and construed in a light most favorable to him when considering a motion to dismiss. *See Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114 (9th Cir. 2021). Considering summary judgment, the following facts are undisputed unless otherwise noted, (*see* Docs. 17, 31), and viewed in the light most favorable to King, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).

On June 13, 2022, at approximately 12:16 p.m., Trooper Van Note observed King traveling in a gold-colored sedan at 66 miles per hour in a 55-mph zone. (Doc. 31 at ¶ 3.) Trooper Van Note activated his lights and pulled King over. (*Id.*) Trooper Van Note told King that he was stopped because he was speeding, and asked for King's license, registration, and insurance. (*Id.* ¶ 4) King provided the

requested documentation. (*Id.*) Van Note observed unopened bottles of Twisted Tea on the front passenger floorboard of King's vehicle and asked if King had consumed any alcohol that day. (*Id.*) King told Van Note he had not. (*Id.*) Trooper Van Note alleges, and King disputes, "that King's eyes were watery and red; that King's speech was slow and delayed; that King's face was slack; that King was repeatedly confused and had difficulty focusing." (*Id.*) While Van Note was checking the status of King's driver's license, he observed a cloud of vapor coming from the driver's side of King's vehicle. (*Id.* ¶ 5.) When he returned to King's vehicle, he observed a vape pen in King's left hand. (*Id.*) The parties dispute whether King's hand and body were trembling. (*Id.*)

Van Note asked King to exit his vehicle and began to administer standard field sobriety tests. (*Id.* ¶¶ 5, 7.) Trooper Van Note administered a Horizontal Gaze Nystagmus ("HGN") test, (*id.* ¶ 7), and Vertical Gaze Nystagmus ("VGN") test and observed zero clues of impairment.[1] He then told King, "you're giving me some signs of impairment, but I'm not seeing stuff that might be related to alcohol. Do you have anything in your system that might make your eyes all glossy and—uh—your speech a little delayed?" (Doc. 27-1 at 12:29:16–12:29:32 p.m.) King

---

[1] The VGN test is not mentioned in Defendants' statement of undisputed facts, but it is mentioned in Defendants' brief, (Doc. 16 at 9), and King's additional facts, (Doc. 31 at 16). It can also be observed in the dash camera footage, (Doc. 27-1 at 12:28:40–12:29:15 p.m.), and Trooper Van Note's DUI report states, "I did not see any clues on HGN and no VGN. (0 clues)," (Doc. 17 at 23).

responded, "so the first speech thing—really—I'm nervous 'cause I've had a lot of bad interactions with law enforcement . . . as far as stuff in my system the only thing I have is caffeine and nicotine . . . as far as my eyes being glossy," King explained he had just moved to Montana and he was still getting used to the dry air. (*Id.* at 12:29:32–12:30:02 p.m.).

Trooper Van Note then called his supervisor, Sergeant Novak, for advice on how to proceed. (Doc. 31 at ¶ 11.) Sergeant Novak is a sergeant with the Highway Patrol and a certified drug recognition expert. (*Id.* ¶¶ 9, 10.) Van Note told Sergeant Novak that King had an unopened Twisted Tea in his vehicle, King's eyes were glassy but were not bloodshot, King was nervous, his hands and body were shaking, and King claimed to only have nicotine and caffeine in his system. (*Id.* ¶ 11.) Van Note told Sergeant Novak, "I didn't get anything on HGN," (Doc. 27-1 at 12:33:48–12:33:50 p.m.), and "there should be HGN based on how glassy his eyes are . . .[,]" (*id.* at 12:34:27–12:34:31). Sergeant Novak advised Van Note to continue with a DUI investigation. (Doc. 31 at ¶ 11.) Next, Van Note administered a walk and turn test and a one-leg stand test. (*Id.* ¶ 12.) The parties disagree about King's performance on these tests and their relevance in detecting impairment from drug use. (*Id.* ¶¶ 12–14.) Following that test, Van Note then took a breath sample, which was negative for the presence of alcohol. (*Id.* ¶ 12.)

Sergeant Novak arrived on scene and, based on the information from Van Note, told him he had probable cause to arrest King for driving under the influence of cannabis. (*Id.* ¶ 15.) Van Note then told King he believed King was under the influence of something other than alcohol and placed him under arrest by handcuffing him and putting him in a patrol car. (*Id.* ¶¶ 17, 21.) King was read "the implied consent advisory," and then consented to a toxicology test, so his blood was drawn at St. Patrick's Hospital less than 90 minutes after the traffic stop began. (*Id.* ¶¶ 21–24.) King was released, given his personal property, and cited for speeding and for driving under the influence of alcohol or drugs despite the consistently negative field and lab testing. (*Id.* ¶ 25.) King alleges, and Defendants have not disputed, that the case was dismissed on July 26, 2022, after the release of King's toxicology report showing no alcohol, cannabis, or other impairing substance detected in his blood. (Doc. 1 at ¶¶ 64–69.)

On October 10, 2025, King filed this civil rights action against Defendants. (Doc. 1.) He alleges that Trooper Van Note and Sergeant Novak, acting within the course and scope of their employment with Highway Patrol, detained and arrested him without probable cause in violation of the Fourth and Fourteenth Amendments, (*Id.* at ¶¶ 71–89 (Counts I and II[2])), and that Colonel Lavin failed to

---

[2] Count II asserts a "violation of Fourth, Fifth, and/or Fourteenth Amendments." (Doc. 1 at 16.) Because a Fifth Amendment violation is not addressed elsewhere in

train and to properly investigate or punish prior constitutional deprivations, (*id.* at ¶¶ 117–131 (Count III)[3]). The complaint goes on to allege that all Defendants violated his Montana constitutional rights of individual privacy, due process, and the protection from unreasonable searches and seizures, (*id.* at ¶¶ 132–136 (Count IV)); and that all Defendants were negligent in their conduct, (*id.* at ¶¶ 137–40 (Count V)), and negligently inflicted emotion distress, (*id.* at ¶¶ 141–43 (Count VI). Defendants seek to dismiss Counts IV, V, and VI for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). (Doc. 13.) Defendants also move for summary judgment on all counts. (Docs. 15, 16.)

## ANALYSIS

The motion to dismiss largely focuses on who the proper defendants are. The parties seem to agree that King should have sued the State. Defendants argue, *inter alia*, that the Officer Defendants are immune from state tort claims under Montana law and the State of Montana is the proper defendant for these claims. Defendants further argue that the Montana constitutional claims should be dismissed because King's negligence claim serves as an adequate remedy for the

---

the Complaint and is only pled against Sergeant Novak, it appears to be a typographical error.

[3] The Complaint incorrectly enumerates paragraph numbers on pages 18–19: paragraph 89 is followed by paragraph 117.

injury alleged. Ultimately, while Defendants' motion to dismiss is granted, King will be given leave to amend to add or substitute the State as a defendant.

In their Rule 56 motion, Defendants seek summary judgment on all claims because there is no genuine dispute of material fact as to the existence of probable cause and "as a matter of law" because Officer Defendants are entitled to qualified immunity. (Doc. 15 at 1–2.) Defendants also argue that the § 1983 claim against Colonel Lavin is insufficiently pled. Ultimately, while a summary judgment determination is premature as to several of King's claims because discovery has yet to be conducted, Officer Defendants are not entitled to qualified immunity. Lastly, although it is unclear why a pleading sufficiency argument was made in a motion for summary judgment, Defendants are correct that the § 1983 claim against Colonel Lavin is insufficiently pled; however, King is given leave to amend this claim.

## I. Motion to Dismiss

### A. Naming the State of Montana

Recognizing the posture of the case and given the strong presumption in favor of granting leave to amend, *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)(2)), and because amending his state law claims against the State of Montana would neither be futile nor subject to dismissal, *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir.

2018), in light of the court's determination on the pending issues, King is permitted to amend to name the State of Montana.

### B. Individual Officer Immunity

The parties agree that because Trooper Van Note, Sergeant Novak, and Colonel Lavin were acting within the course and scope of their employment, the State of Montana is liable for the acts of its employees and is the proper defendant. Mont. Code Ann. § 2-9-305(5); *Gardiner-Park Cnty. Water and Sewer Dist. v. Knight*, 549 P.3d 1151, 1156 (Mont. 2024) ("[I]f the governmental entity acknowledges the actions in question were within the course and scope of the employee's employment, the employee is immune from suit."). Consequently, the motion to dismiss the state-law claims against the Officer Defendants is granted.

### C. Montana Constitutional Claims

Because King's negligence claim is an adequate substitute for his claims alleging an unreasonable seizure under the Montana Constitution, *Estate of Frazier*, 484 P.3d 912, 922 (Mont. 2021), that claim is dismissed with prejudice.

## II. Motion for Summary Judgment

### A. Premature Claims

Because courts "should resolve the threshold question [of qualified immunity] before permitting discovery," *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998), and sufficiency of the pleadings under Rule 8 of the Federal Rules of

Civil Procedure are not based on evidence, such questions are appropriately resolved at this stage. Because discovery has yet to be conducted, summary judgment as to the negligence and negligent infliction of emotional distress claims is premature as "neither party has had a realistic opportunity to pursue factfinding, much less carry the burden of showing (or disproving) the elements of Plaintiff's claims." *Encinas v. U. of Wash.*, 2022 WL 4598083, at *8 (W.D. Wash. Sept. 30, 2022). More plainly, based "solely on the limited record" here, it cannot be "determine[d] whether there are no disputed issues of material fact." *Perez v. State of Nevada*, 2016 WL 4744134, at *2–3 (D. Nev. Sept. 12, 2016). Summary judgment is therefore denied as to King's state-law claims on this ground.

**B. Qualified Immunity**

There is a genuine dispute whether there was probable cause to arrest King and, accepting King's version of events, it would have been "clear to a reasonable officer that [the] conduct was unlawful in the situation [they] confronted." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1078 (9th Cir. 2011) (internal quotation marks omitted). Summary judgment is therefore denied on the question of qualified immunity.

**C. Supervisory Liability**

King fails to allege facts that "explain how the training with respect to probable cause was deficient or inadequate" or "how the deficient training caused

[his] injury." *McFarland v. City of Clovis*, 163 F. Supp. 3d 798, 803 (E.D. Cal. 2016). His allegations regarding discipline are equally "bare." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1253 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). King's claims against Colonel Lavin are therefore dismissed. But because he may be able to allege facts to cure these deficiencies, amendment is permitted.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that the motion to dismiss, (Doc. 13), is GRANTED and the motion for summary judgment, (Doc. 15), is GRANTED in part and DENIED in part. Count IV is DIMISSED. Officer Defendants are DISMISSED WITHOUT PREJUDICE as to Counts V and VI. Although not a summary disposition, Count III is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that King is GRANTED LEAVE to amend his pleadings to substitute in the State of Montana and to plead a sufficient § 1983 supervisory liability claim against Colonel Lavin on or before September 8, 2026.

DATED this 24th day of August, 2026.

Donald W. Molloy 15:05 P.M.

Donald W. Molloy, District Judge
United States District Court